**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MARIA COTO, individually and
on behalf of other similarly situated individuals,

        Plaintiff,

        v.                           Case No. 25-cv-00160-SCY-GJF

DAIRYLAND INSURANCE COMPANY,
SENTRY INSURANCE COMPANY, a/k/a
SENTRY INSURANCE A MUTUAL INSURANCE COMPANY, a/k/a
SENTRY INSURANCE,

        Defendants.

**<u>FIRST AMENDED CLASS COMPLAINT</u>**

1. Plaintiff Maria Coto, for herself and on behalf of the Class and Subclass defined herein, brings this First Amended Class Action Complaint under Fed. R. Civ. P. 23 to recover damages from, Dairyland Insurance Company and Sentry Mutual Insurance Company ("Defendant[1]") and states as follows:

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. §§ 1332(a) and 1332(d)(2).

3. Venue is proper under 28 U.S.C. § 1391(b)(2) or, in the alternative, 28 U.S.C. § 1391(b)(3).

4. Defendants are real parties in interest and proper parties to this action.

5. This Court has personal jurisdiction over the Defendant. The acts complained of herein occurred in the District of New Mexico.

---

[1] Defendants Dairyland and Sentry appear to be the same company pursuant to the policy documents. *See* Exhibit 1.

## PARTIES

6.    Plaintiff Maria Coto is, and was at all material times, a resident of San Miguel County, New Mexico.

7.    Defendant Dairyland Insurance Company is a foreign for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico. Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

8.    Defendant Sentry Insurance Company, a/k/a Sentry Insurance a Mutual Insurance Company, a/k/a Sentry Insurance, is a foreign, for-profit corporation conducting business, including the sales and solicitations for the sales of insurance policies, throughout the State of New Mexico. Process is properly served on it via its registered agent, the Office of Superintendent of Insurance.

## FACTUAL ALLEGATIONS

**Plaintiff purchased an uninsured/underinsured motorist policy from Defendant.**

9.    In 2017, Defendant issued Plaintiff a motor vehicle insurance policy (hereafter, "Policy") effective May 31, 2017. *See* Exhibit 1 (Coto application and policy).

10.    The Policy that Defendant issued to Plaintiff was Policy No. 11404221733. The Policy was in effect upon renewal from January 31, 2018, to February 28, 2018. *Id*.

11.    The Policy provided bodily injury liability coverage on two vehicles in the amount of $25,000 each person and $50,000 per accident, per vehicle. *Id*.

12.    The Policy also purportedly provided uninsured and underinsured motorist bodily injury coverage in the amount of up to $25,000.00 per person/$50,000.00 per accident, "non-

stacked," which was the maximum amount of coverage that Plaintiff could purchase given her purchase of liability insurance at the $25,000.00 per person/$50,000.000 per accident limit. *Id.*

13.    The Policy also purportedly provided uninsured and underinsured motorist property damage coverage in the amount of up to $25,000.00 per accident, "non-stacked," which was the maximum amount of coverage that Plaintiff could purchase given her purchase of property damage liability insurance in the amount of $25,000 per accident. *Id.*

14.    Plaintiff paid a premium of $7.51 per month for the uninsured and underinsured motorist bodily injury coverage and $7.78 per month for the uninsured and underinsured motorist property damage coverage that Defendant purportedly offered from May 31, 2017, through February 28, 2018. *Id.*

**Defendant's systematic application process, declarations, UM/UIM information and selection forms, and policy are ambiguous and misrepresented the true value of underinsured motorist coverage and failed to properly and adequately disclose to Plaintiff that the underinsured motorist coverage for which Defendant collected a premium was illusory and misleading.**

15.    Defendant's application and the Policy failed to properly inform Plaintiff about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) (the *Schmick* offset) and did not meet Plaintiff's reasonable belief of being properly insured in the event she sustained significant injuries.

16.    The application and the Policy did not contain clear, unambiguous language regarding the effects of the *Schmick* offset. It does not use the word "offset" at all in either the application or the policy. *See id.*

17.    Defendant's application and application process did not alert Plaintiff, nor make clear to the ordinarily and similarly situated insureds, the fact that the *Schmick* offset drastically and materially diminished payment of underinsured motorist benefits arising from an otherwise covered occurrence under the policy for accidents involving minimal limits underinsured motorists.

18.     Defendant's application and policy booklet did not alert Plaintiff that she would be billed a premium for underinsured motorist coverage on a minimum limits policy, where there was no likelihood of her ever being able to recover the full amount of underinsured motorist coverage for which she was billed and a high likelihood she would be unable to collect any underinsured motorist coverage for which she was charged a premium.

19.     Defendant's boilerplate forms which should allow insureds to select or reject Uninsured and Underinsured Motorists Coverage did not adequately disclose the definition of an "Underinsured Motorist." *Id.*

20.     Defendant's boilerplate forms which allow insureds to select or reject Uninsured and Underinsured Motorists Coverage are misleading and ambiguous and do not in any manner refer to the New Mexico statute, NMSA § 66-5-301(B). *Id.*

21.     Defendant's application, pursuant to NMSA § 66-5-301(C), should not mislead so that a meaningful offer is made, and an insured is able to make a knowing and intelligent choice of UM/UIM coverage.

22.     Defendant's boilerplate forms and ambiguous policy definitions failed to properly inform Plaintiff about the offset described in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985) ("the *Schmick* offset") and did not meet her reasonable expectations of being properly insured in the event she sustained significant injuries. *See Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 2, 501 P.3d 433, 434 ("We conclude that this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit.").

23.     Nothing in Defendant's boilerplate forms advises an insured that they will never receive the full amount of underinsured motorist coverage for which they have contracted.

24.     When Plaintiff purchased automobile coverage, Defendant misled her as to how underinsured motorist coverage operates in the event of a covered occurrence involving an underinsured driver.

25.     Defendant failed to properly inform Plaintiff that she and her insured beneficiaries would most likely not be afforded the full UIM benefits from paying a premium for underinsured motorist coverage because, pursuant to the *Schmick* offset, Plaintiff and insured beneficiaries' recovery of underinsured motorist benefits would be offset by the amount of the tortfeasor's liability coverage. *See id*. at ¶ 26 ("We refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language.").

26.     Defendant's forms did not contain clear, unambiguous language regarding the effects of the *Schmick* offset and are misleading, i.e., illusory.

27.     Defendant's systematic processes forms did not alert Plaintiff, nor make clear to ordinarily and similarly situated insureds, the fact that the *Schmick* offset drastically and materially diminished payment of benefits arising from a covered occurrence under the policy for crashes involving underinsured motorists. *See id*.

28.     Defendant's actions deprived Plaintiff of an opportunity to consider a better purchase of UM/UIM coverage.

29.     Defendant's systematic processes and forms misrepresented the true value of the illusory underinsured motorist coverage that it advertised and sold to Plaintiff and for which Defendant collected premiums, a business practice that the New Mexico Supreme Court has held to be clearly unfair:

> First, we find no merit in Defendant's argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like

Plaintiff. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels. The Court in *Weed Warrior* concluded that it was the obligation of the insurance company to clearly provide its policyholders the opportunity to match their UM/UIM policy with their liability coverage. *Id.* ¶ 15. In this case [*Crutcher*], we are simply identifying the same consequence previously illuminated in *Weed Warrior*. *Id.* ¶ 10.) and *Id*, ¶ 27. If a person pays for something called "underinsured motorist" insurance, we think it reasonable for the person to be under the impression that she  or she is, in fact, eligible to receive UIM coverage if involved in an accident with someone who does not have enough insurance to cover the costs of the insured's injuries. *Id.*

*Id*. at ¶ 26.

**Plaintiff Maria Coto was injured in a collision with an underinsured motorist.**

30.    On February 20, 2018, Plaintiff was injured in an automobile collision that occurred on Interstate 25. Plaintiff was stopped waiting for traffic to clear at a yield sign to get onto northbound Cerrillos Road in Santa Fe, New Mexico when an insured carrying $50,000 per person in automobile liability insurance rear-ended Plaintiff's vehicle.

31.    Plaintiff was not at fault for the collision.

32.    At the time of the collision, Plaintiff was abiding by all applicable traffic laws.

33.    As a result of the collision, Plaintiff was transported to the hospital via ambulance as she suffered serious bodily injuries and other damages.

34.    Plaintiff suffered total damages well in excess of $50,000.00.

35.    At the time of the collision, Plaintiff was insured with Defendant under Policy No. 11404221733, which provided her with uninsured and underinsured motorist insurance coverage in the amount of up to $25,000.00 per person/$50,000.00 per accident, non-stacked.

36.    After the collision, Plaintiff made a claim with the tortfeasor's insurer and  received the $50,000.00 limit from the tortfeasor.

37.    At the time of the collision, Plaintiff was under the reasonable belief and had a reasonable expectation that she was entitled to underinsured motorist benefits pursuant to the

application and the insurance policy that Defendant had issued. *See* Exhibit 1.

38.     Plaintiff reported the collision to Defendant and, through counsel, opened a claim on the underinsured motorist coverage for which Defendant had collected premiums.

39.     On January 30, 2023, Defendant , under a standardized business practice, opened a claim, assigned claim number 97A239230-460, and randomly assigned the adjustment of the matter to one of their adjusters.

40.     To date, Plaintiff has not received underinsured motorist benefits from Defendant.

## CLASS ACTION ALLEGATIONS

41.     This action is properly maintainable as a class action pursuant to Rule 1-023 NMRA. The Class is defined as follows:

> All persons from January 2004 to present (and their heirs, executors, administrators, successors, and assigns) insured by Defendant where Defendant's written representations of UM/UIM benefits misled them to reasonably believe they paid a premium for minimum underinsured motorist coverage on a policy that was issued or renewed in New Mexico and that purported to provide minimum underinsured motorist coverage on the face of its application and declaration pages, but which effectively provides no underinsured motorists coverage, reflected on Defendant's declaration page, because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985).

42.     Pursuant to Rule 1-023(C)(4)(b), the Class properly includes a Subclass:

> All Class Members from January 2004 to present (and their heirs, executors, administrators, successors, and assigns) where a minimum underinsured motorist coverage on a policy that was issued or renewed in New Mexico by Defendant that purported to provide the underinsured motorist coverage on the face of its application and declaration pages, but which in fact provides no underinsured motorists coverage benefits because of the statutory offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, 704 P.2d 1092 (1985), and who sustained damages in excess of an insured tortfeasor's policy limits, received the extent of all bodily injury liability and/or property damage limits available and would be or were denied those benefits by Defendant .

43.    The proposed class and subclass definitions are precise, objective, and presently ascertainable, and it is administratively feasible for the Court to ascertain whether a particular individual is a member of the Class.

44.    The members of the Class are so numerous that joinder of all members of the Class is impracticable.

45.    Plaintiff's claims are typical of the claims of members of the Class and Subclass.

46.    Certification of the Class and Subclass is desirable and proper, because there are questions of law and fact in this case common to all members of the Class. Such common questions of law and fact include, but are not limited to:

a.    Whether Defendant breached contractual obligations owed to their New Mexico policyholders;

b.    Whether Defendant breached duties owed to New Mexican insureds under the implied covenant of good faith and fair dealing;

c.    Whether Defendant violated NMSA 1978, §§ 59A-16-1 to 30;

d.    Whether Defendant failed to disclose one or more material facts in connection with the marketing or sale of the insurance policies at issue;

e.    Whether Defendant misled or deceived their policyholders in connection with the marketing or sale of the policies at issue;

f.    How properly to construe Defendant's standard application forms and other standard form documents relative to the *Schmick* offset;

g.    What remedies are available to Plaintiff and Class Members in light of the answers to the foregoing questions; and

h.    Whether and to what extent there may be merit in any affirmative defenses that

Defendant might claim.

47.    The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

48.    Common or generalized proof will predominate with respect to the essential elements of the eight claims at issue.

49.    The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the common ones.

50.    If any member or members of the Class has an individually controlling interest to prosecute a separate action, they may exclude themselves from the Class upon receipt of notice under Rule 1-023(C)(2).

51.    The determination of the claims of all members of the Class in a single forum and in a single proceeding would be a fair, efficient and superior means of resolving the issues raised in this litigation.

52.    Any difficulty encountered in the management of the proposed Class is reasonably manageable, especially when weighed against the impossibility of affording adequate relief to the members of the Class through numerous independent actions.

53.    The need for proof of Plaintiff's and Class members' damages will not cause individual issues to predominate over common questions. The amounts of losses can be efficiently demonstrated either at trial or as part of routine claims administration through accepted and court-approved methodologies with the assistance of court-appointed personnel, including Special Masters. Certain types or elements of damage are subject to proof using aggregate damage methodologies or simply rote calculation and summation.

54.    The particular common issues of liability and the quantum of punitive damages or

ratio of punitive damages to actual harm, are common to Class Members no matter what type of harm or injury was suffered by each Class Member.

55.     Defendant have acted or refused to act on grounds generally applicable to all Class Members, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to Class Members. Plaintiff seeks to establish the rights and obligations of the parties with respect to the claims at issue in this case and to enjoin Defendant from continuing to engage in those practices that violate the duties, and the contractual and legal obligations owed to Plaintiff and Class Members under New Mexico statutory and common law.

56.     A class action is superior to maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct. A class action allows the Court to process all rightful claims in one proceeding. Class litigation is manageable considering the opportunity to afford reasonable notice of significant phases of the litigation to Class Members and permit distribution of any recovery. The prosecution of separate actions by individual Class Members, or the individual joinder of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of each Class Member, should that be determined to be appropriate.

57.     The conduct of this action as a class action conserves the resources of the parties and the court system, protects the rights of each member of the class, and meets all due process requirements.

58.     Certification of the Class with respect to particular common factual and legal issues concerning liability, as well as the necessary and appropriate quantum of punitive damages, or ratio of punitive damages to actual harm, is appropriate under Rule 1-023.

59.     Certification of the Class is desirable and proper because Plaintiff will fairly and adequately protect the interests of the Class that they seek to represent. There are no conflicts of interest between Plaintiff's claims and those other members of the Class. Plaintiff is cognizant of her duties and responsibilities to the Class. Plaintiff's attorneys are qualified, experienced, and able to conduct the proposed class action.

## CLAIM 1 - NEGLIGENCE

60.     Plaintiff and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

61.     Defendant had a duty to not misrepresent underinsured coverage and ensure Plaintiff and Class Members would be offered and obtain the maximum benefit of underinsured coverage purchased.

62.     Since the issuance of the New Mexico Supreme Court's opinion of *Schmick* on August 14, 1985, it was reasonably foreseeable that the underinsured coverage sold Plaintiff and Class Members was essentially non-existent and Defendant therefore materially misrepresented the terms and benefits of underinsured coverage yet charged a premium for such illusory and/or misleading coverage.

63.     A reasonably prudent insurance company exercising ordinary care would not materially misrepresent the terms of underinsured coverage by properly informing its insureds of the coverage they were purchasing and obtaining a written waiver acknowledging its insured's consent to the purchase of what amounts to illusory underinsured motorist coverage.

64.     Defendant's actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

65.     As a result of Defendant's negligence, Plaintiff and Class Members sustained actual damages for which Defendant are liable. Plaintiff and Class Members are entitled to punitive damages for actions of Defendant that were willful, reckless and wanton, and in bad faith and/or based on dishonest business judgments.

**CLAIM 2 – VIOLATIONS OF THE NEW MEXICO**
**UNFAIR TRADE PRACTICES ACT**

66.     Plaintiff and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

67.     There was in effect, at all times material, a New Mexico statute commonly known as the New Mexico Unfair Trade Practices Act, NMSA 1978, § 57-12-2 to 58-12-10 ("UPA"), including but not limited to Sections 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7) and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or deceptive trade practices:

> D.     "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12 NMSA 1978], a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of her trade or commerce, which may, tends to or does deceive or mislead and includes but is not limited to:
>
> (7)     representing that the goods or services are of a particular standard, quality or grade or that goods are of a particular style or model if they are of another;
>
> (14)    using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive;
>
> (15)    stating that a transaction involves rights, remedies or obligations that it does not involve;

E.    "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to a person's detriment: takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or results in a gross disparity between the value received by a person and the price paid.

68.    Defendant failed to provide insurance applications and policies containing sufficient information to properly inform a reasonably prudent person purchasing underinsured insurance when Plaintiff and others similarly situated were under the reasonable belief that such coverage existed and would protect them.

69.    In the regular course of its business, Defendant or their agents knowingly made oral and written statements that were false and misleading in connection with the sale of underinsured motorist insurance in New Mexico.

70.    These ambiguous, false, and misleading representations may, tend to, and do deceive or mislead persons into believing that underinsured motorist coverage has a value that it does not have.

71.    In the regular course of its business, Defendant or its agents took advantage of its customers' lack of knowledge, ability, experience or capacity to a grossly unfair degree by marketing, advertising, selling, and receiving premium payments for underinsured motorist coverage.

72.    Since the New Mexico Supreme Court's opinion in *Schmick v. State Farm Mut. Aut. Ins. Co.,* 1985-NMSC-073, 704 P.2d 1092 and *Progressive Northwest Insurance Co. v. Weed Warrior Services*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209, Defendant have been on notice that underinsured motorist policies provide no coverage at minimal limits, yet Defendant

market, advertise, sell, and receive premiums for underinsured motorist policies to and from customers, such as Plaintiff and Class Members, who do not know and do not understand that if they purchase underinsured motorist coverage, they will not receive any underinsured motorist coverage at all when damages in excess of the tortfeasor's liability coverage are incurred, losing the full benefit of their underinsured coverage displayed on the face of their declaration pages because of the *Schmick* offset.

73.    Defendant's actions resulted in a gross disparity between the value of the underinsured motorist coverage received by Plaintiff and Class Members and the price of the premiums that Plaintiff and Class Members paid for underinsured motorist coverage.

74.    Defendant, acting through its agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3, including but not limited to Sections 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17) and Section 57-12-2(E).

## CLAIM 3 – VIOLATIONS OF THE NEW MEXICO UNFAIR INSURANCE PRACTICES ACT

75.    Plaintiff and Class Members incorporate by reference the preceding paragraphs as if they were fully stated herein.

76.    There was in effect at all times material a New Mexico statute commonly known as the Insurance Code New Mexico Unfair Insurance Practices Act, NMSA 1978, §§ 59A-16-1 to 59A-16-30 ("UIPA").

77.    The UIPA provides a private right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that statute by an insurer or agent and is granted a right to bring an action in district court to recover actual damages.

78.    Plaintiff and Class Members were insured under the policies issued by the

Defendant .

79.     Defendant owed Plaintiff and Class Members the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

80.     In the sale and provision of insurance, Defendant failed to exercise good faith and failed to give the interests of Plaintiff and of Class Members the same consideration it gave their own interests.

81.     Defendant misrepresented the terms of the policy sold and provided to Plaintiff and Class Members, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading and failed to implement and follow reasonable standards in the sale and provision of insurance.

82.     Defendant's acts and failures to act were in reckless disregard of Plaintiff's and Class Members' rights as insureds under the subject policies.

83.     Defendant's acts and practices took advantage of the lack of knowledge and experience of Plaintiff and Class Members to a grossly unfair degree.

84.     Defendant failed to abide by their statutory duties under the UIPA, and such violations constitute negligence per se.

85.     Defendant misrepresented to Plaintiff and Class Members pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA 1978, § 59A-16-20(A).

86.     Defendant's failure to act in good faith and Defendant's violations of the Insurance Code and Unfair Practices Act are proximate causes of damages sustained by Plaintiff and Class Members.

87.     Defendant's conduct was in bad faith, malicious, willful, wanton, fraudulent, based on dishonest business judgments and/or in reckless disregard of Plaintiff and Class Members'

rights.

88.    Plaintiff and Class Members are entitled to attorneys' fees and costs pursuant to NMSA 1978, §§ 59A-16-30 and 39-2-1. As a direct and proximate result of Defendant's acts, omissions policies, and conduct in violating UIPA, as set forth above, Plaintiff and Class Members have sustained damages, in addition to the damages common to all counts of this complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

### CLAIM 4 – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

89.    Plaintiff and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

90.    A special relationship exists between Defendant, on the one hand, and Plaintiff and Class Members, respectively, on the other hand, sufficient to impose a duty of good faith and fair dealing on Defendant owed to Plaintiff and Class Members.

91.    Implicit in the contract of insurance between Plaintiff and Class Members, on the one hand, and Defendant on the other, was the covenant that Defendant would, at all times, act in good faith and deal honestly and fairly with Plaintiff and Class Members.

92.    Defendant breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

a.    Misrepresenting to Plaintiff and Class Members underinsured motorist coverages it solicited and sold;

b.    Charging a premium for coverage that would not be provided;

93.    As a direct and proximate result of Defendant's acts and omissions alleged herein,

Plaintiff and Class Members have suffered damages in an amount to be proven at trial.

94.     Defendant's acts and omissions alleged herein, and breach of the implied covenant of good faith and fair dealing were done intentionally, willfully, wantonly, grossly, with dishonest business judgment, and/or with reckless disregard for the rights of Plaintiff and Class Members.

95.     Accordingly, Plaintiff and Class Members are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish Defendant for its misconduct and to deter others from similar conduct in the future.

### CLAIM 5 – NEGLIGENT MISREPRESENTATION

96.     Plaintiff and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

97.     A special relationship existed between Defendant, on the one hand, and Plaintiff and Class Members, respectively, on the other hand, sufficient to impose a duty on Defendant to disclose accurate information to Plaintiff and Class Members.

98.     As early as 1985, when the New Mexico Supreme Court published its decision in *Schmick v. State Farm*, Defendant knew that underinsured motorist coverage would be illusory and/or misleading under most ordinary circumstances.

99.     Defendant, however, withheld this information from Plaintiff and Class Members and hid from them the fact that the underinsured motorist coverage as impacted by the *Schmick* offset is essentially worthless in effect.

100.    From 1985 through the present, Defendant failed to disclose material facts and made material misrepresentations to Plaintiff and Class Members regarding underinsured motorist coverage.

101.    Defendant, by their failures and omissions, misrepresented underinsured motorist

coverages through their standard and uniform applications and policies given to Plaintiff and Class Members, which Defendant knew or should have known, were misleading and contained material misrepresentations.

102.    Defendant's material omissions and misrepresentations were made to induce reasonable consumers, like Plaintiff and Class Members to purchase underinsured motorist coverage that Defendant knew or should have known was illusory and/or misleading.

103.    Plaintiff and Class Members reasonably relied on Defendant's material omissions and misrepresentations when deciding to purchase underinsured motorist coverage at the level of coverage they respectively purchased.

104.    As a result of Defendant's misrepresentations and omissions, Defendant are liable to Plaintiff and Class Members for their damages flowing from those misrepresentations and omissions.

105.    As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and Class Members suffered economic loss, including the payment of premiums for coverage that had no value. Plaintiff and Class Members seek the full measure of damages allowed under applicable law.

## CLAIM 6 – UNJUST ENRICHMENT

106.    Plaintiff and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

107.    Defendant have applied the *Schmick* offset to its insureds' claims and denied underinsured motorist coverage benefits in New Mexico since January 1, 2004. Defendant, through its ambiguous insurance contracts, have misled, deceived, and acted in an unfair manner for decades and retained benefits (i.e., the payment of UIM claims, and retained premium

charges which were unearned) from thousands of New Mexican insureds for years, including Plaintiff and Class Members. The windfall Defendant received allowed them to invest and enjoy the benefits of their deceptive and intentional conduct.

108.    Plaintiff and Class Members are entitled to the value of the UIM benefits and out-of-pocket damages under the equitable theory of unjust enrichment.

109.    Defendant should be ordered to disgorge of the value of the UIM benefits retained, the UIM premiums received, and the unjust profit that it derived from.

## CLAIM 7 – INJUNCTIVE RELIEF

110.    Plaintiff and Class Members incorporate by reference the preceding paragraphs as though they were stated fully herein.

111.    Plaintiff and Class Members are entitled to injunctive relief under the claims they have pled because Plaintiff and Class Members would suffer an irreparable injury that monetary damages at a later time would not adequately compensate them for the injury of paying a premium for illusory and/or misleading coverage.

112.    Defendant should be enjoined from continuing practices that violate the duties, and the contractual and legal obligations owed to Plaintiff and Class Members.

113.    Defendant must be compelled to stop their practice of collecting premiums for the sale of illusory and/or misleading underinsured motorist coverage

## REQUEST FOR RELIEF

Plaintiff and Class Members request a jury trial and the following relief:

i.    An order certifying this action to proceed as a class action, authorizing Plaintiff to represent the interests of the Class Members as appropriated and appointing undersigned counsel to represent the class;

ii.     Awarding compensatory damages to Plaintiff and Class Members for the damages done to them by Defendant in an amount to be proven at trial;

iii.    Awarding Plaintiff and Class Members damages from Defendant as a result of its violations of the UIPA, in an amount to be determined at trial for attorneys' fees and costs;

iv.     Awarding treble damages in accordance with NMSA 1978, Sections 57-12-10(B) and any and all damages pursuant to NMSA 1978, Sections 57-12-1 through -26, which will deter Defendant and others from such unfair trade practices and wrongful conduct in the future and will punish them for the conduct set forth herein;

v.      Granting injunctive relief requiring Defendant to properly inform Plaintiff and Class Members throughout the application and policy underwriting process of the true value of the underinsured motorist benefits that are being advertised and sold;

vi.     Awarding Plaintiff and Class Members their costs and expenses incurred in these actions, including reasonable attorney's fees, experts' fees, and costs; and

vii.    Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Kedar Bhasker*
Kedar Bhasker
LAW OFFICE OF KEDAR BHASKER, LLC
2741 Indian School Rd. NE
Albuquerque, NM 87106
Phone: 505 407-2088
Kedar@bhaskerlaw.com

Corbin Hildebrandt
CORBIN HILDEBRANDT P.C.

2741 Indian School Rd. NE
Albuquerque, NM 87106
Phone: 505 998-6626
corbin@hildebrandtlawnm.com

Geoffrey Romero
LAW OFFICES OF GEOFFREY R. ROMERO
4801 All Saints Rd. NW Ste. A
Albuquerque, NM 87120
(505) 247-3338
geoff@geoffromerolaw.com

Jonathan D. Woods
PRINCE, SCHMIDT, BACA & WOODS, LLP
630 Paseo de Peralta
Santa Fe, NM 87501
(505) 982-5380
(505) 986-9176 (Fax)
jonathan@lawforpersonalinjury.com

*Counsel for the Plaintiffs*