# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

————————————

MARIA COTO, *individually and on behalf of*
*other similarly situated individuals*,

      Plaintiff,

v.                                                                      Case No. 1:25-cv-00160-KWR-GJF

SENTRY INSURANCE COMPANY
and DAIRYLAND INSURANCE COMPANY,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Plaintiff's

Amended Class Action Complaint (**Doc. 17**). Having reviewed the pleadings and the relevant law,

the Court finds that Defendants' Motion to Dismiss is well-taken in part, and therefore, is

**GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

This putative class action arises out of a dispute over the adequacy of disclosures related

to Plaintiff Maria Coto's ("Plaintiff") uninsured/underinsured motorist ("UM/UIM") coverage.

Plaintiff purchased a minimum UM/UIM motor vehicle insurance policy from Defendants

Sentry Insurance Company and Dairyland Insurance Company ("Defendants"). **Doc. 14 ¶¶ 9–13**

(Amended Complaint). Plaintiff paid a monthly premium for her UM/UIM policy. *Id.* **¶ 14**. In

February 2018, Plaintiff was injured in an accident with a tortfeasor carrying $50,000 in bodily

injury liability insurance. *Id.* **¶ 30**. After suffering more than $50,000 in damages, Plaintiff filed

a claim with Defendants, expecting to receive UIM benefits, since the amount received from the

tortfeasor's insurer did not cover her accident-related expenses. *Id.* ¶¶ **34, 36, 38**. Defendants have not paid any UIM benefits to Plaintiff to date. *Id.* ¶ **40**.

In the Amended Complaint, Plaintiff, individually and on behalf of the proposed class, contends that Defendants misrepresented that her UIM coverage had value when Defendants' forms, application processes, and agents failed to properly inform Plaintiff of the limitations of the offset articulated in *Schmick v. State Farm Mutual Automobile Insurance Co.*, 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092, which reduces an insured's UIM benefits by the tortfeasor's liability insurance. *Id.* ¶¶ **17, 25, 28, 29, 69**.

According to Plaintiff, Defendants' minimum UIM policy was illusory, and Defendants misled her by not adequately informing her of the offset and the likely result that she "would be unable to collect any underinsured motorist coverage for which she was charged a premium," in violation of *Crutcher v. Liberty Mutual Insurance Co.*, 2022-NMSC-001, ¶ 33, 501 P.3d 433. *Id.* ¶¶ **15–27**.

Plaintiff filed the Amended Complaint asserting the following claims:

Count I: Negligence

Count II: Violations of the Unfair Trade Practices Act

Count III: Violations of the Unfair Insurance Practices Act

Count IV: Breach of the Covenant of Good Faith and Fair Dealing

Count V: Negligent Misrepresentation

Count VI: Unjust Enrichment

Count VII: Injunctive Relief

*Id.* Defendants subsequently filed a motion to dismiss, apparently pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) and (b)(6). *See* **Doc. 17**.

**DISCUSSION**

Under New Mexico's Mandatory Financial Responsibility Act, every driver must carry an "absolute minimum amount" of auto liability insurance of at least $25,000 per person and $50,000 per occurrence and UM/UIM coverage of at least the same amount. *Crutcher*, 2022-NMSC-001, ¶ 6 (citing NMSA 1978, §§ 66-5-215(A)(1)–(2), 66-5-301(A) (1983)). Uninsured motorist ("UM") insurance coverage "protects drivers who are damaged by a tortfeasor who does not have automobile insurance." *Id.* ¶ 15. Underinsured ("UIM") insurance coverage "protects drivers who are hit by a tortfeasor who does not have enough auto insurance to cover the cost of the driver's injuries and damages." *Id.* ¶ 5. As defined in the Act, a tortfeasor is underinsured when the tortfeasor's liability insurance is greater than or equal to the insured's UM/UIM coverage. *Id.* ¶ 5 (citing § 66-5-301(B)).

In *Schmick*, the New Mexico Supreme Court held that an insured's UM/UIM benefits are reduced by the tortfeasor's liability insurance, so that the maximum an insured can receive is the amount of UIM coverage she purchased. 1985-NMSC-073, ¶ 30. Considering the Act's minimum UM/UIM coverage requirement, a minimally insured drivers will rarely see a benefit from their UIM coverage once the *Schmick* offset is applied. *See Crutcher*, 2022-NMSC-001, ¶¶ 20–21 (citing *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, 149 N.M. 157, 245 P.3d 1209).

Following *Schmick* and *Weed Warrior*, the New Mexico Supreme Court in *Crutcher* held that (1) UIM coverage at the minimum limits was illusory in the sense that it was misleading to the average insured, but (2) insurers were permitted by statute to charge premiums for minimum limit UIM coverage as long as the limitations of the coverage were "adequately" disclosed to

insureds. 2022-NMSC-001, ¶ 2. "Without this disclosure, an insurer may not charge a premium for minimum underinsurance coverage." *Id.*

For the following reasons, the Court denies Defendants' Motion pursuant to Rule 12(b)(1). The Court grants Defendants' Rule 12(b)(6) Motion to Dismiss Count I and denies Defendants' Motion for the remaining counts.

## I.    Motion to Dismiss for Lack of Standing under Rule 12(b)(1).

As a threshold matter, Defendants argue that the Court should dismiss Counts I through IV because Plaintiff did not suffer an injury.  *See* **Doc. 17 at 8–13**. Although Defendants do not state the rule under which the claims should be dismissed, the Court will treat them as a motion to dismiss under Rule 12(b)(1).

Standing under Article III of the U.S. Constitution is a precursory requirement for subject matter jurisdiction. *Scott v. Allen*, 153 F.4th 1088, 1093 (10th Cir. 2025).  To establish standing, a plaintiff must show that: "(1) she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *D.L.S. v. Utah*, 374 F.3d 971, 974 (10th Cir. 2004) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)).  An injury in fact must be concrete, affect the plaintiff personally and individually, and be actual or imminent. *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "concrete" injury must be a "real" injury, but it does not have to be a "tangible" injury. *Id.* (citing *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021)).

Motions to dismiss for lack of standing are "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Hernandez v. Grisham*, 499 F. Supp. 3d 1013, 1047 (D.N.M. 2020) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)); *see also*

*Hill v. Vanderbilt Cap. Advisors, LLC*, 702 F.3d 1220, 1224–25 (10th Cir. 2012) ("Our court has repeatedly characterized standing as an element of subject matter jurisdiction.").

Here, Defendants challenge the injury-in-fact element. Defendants assert that Counts I through IV should be dismissed because Plaintiff did not suffer an injury since Plaintiff was not subject to the *Schmick* offset. **Doc. 17 at 8–9**. According to Defendants, Plaintiff was not subject to the offset because the tortfeasor was not "underinsured" under New Mexico law. ***Id.***

The Court disagrees with Defendants. First, the Court notes that the *Schmick* offset applies regardless of whether the tortfeasor is "underinsured" under Section 66-5-301(B).[1] Every insured is subject to the *Schmick* offset when a tortfeasor's liability insurance pays towards an insured's accident-related costs. The holding in *Schmick* simply requires that UM/UIM benefits are always offset by—not aggregate to—the tortfeasor's liability coverage. *See* 1985-NMSC-073, ¶ 30. An insured can only recover up to their UIM benefits after deducting her recovery from the tortfeasor's liability insurance. *Id.* As consequence of the *Schmick* offset, an insured with minimum UIM coverage receives nothing in UIM benefits when the tortfeasor's liability coverage is equal to or greater than the insured's UM/UIM coverage. *See Crutcher*, 2022-NMSC-001, ¶ 20. Therefore, Plaintiff was subject to the *Schmick* offset.

Second, the Court finds that Plaintiff has alleged that she was injured. Here, the Court's inquiry focuses on the coverage held by Plaintiff. *Cf. Garcia v. Republic Underwriters Ins. Co.*, 658 F. Supp. 3d 1022, 1027 (D.N.M. 2023) (dismissing case because plaintiff's non-minimum limits coverage policy was not illusory). Plaintiff held a minimum limits UM/UIM policy. She

---

[1] Further, the Court notes that the New Mexico Supreme Court has recognized that a person may reasonably understand a tortfeasor to be "underinsured" when the tortfeasor's liability insurance does not cover an insured's injuries and damages. *See* Crutcher, 2022-NMSC-001, ¶ 30. Since the Court takes Plaintiff's allegations as true, the Court will interpret Plaintiff's use of the tortfeasor's status as "underinsured" to mean this broader definition.

alleges that she understood her UIM policy to provide UIM benefits if her damages exceeded tortfeasor's liability insurance. According to Plaintiff, she held this understanding because Defendants did not properly disclose the result of the *Schmick* offset to Plaintiff such that a reasonable insured would understand it—Defendants did not disclose that UIM benefits are illusory for policyholders with minimum UM/UIM coverage. This nondisclosure, amounting to misrepresentation, caused her harm when Defendants collected a premium from Plaintiff for an illusory policy knowing that Plaintiff would rarely, if ever, receive UIM benefits. Further, Plaintiff alleges, due to Defendants' misrepresentation, she was deprived the opportunity to consider purchasing better UM/UIM coverage.

Therefore, the Court finds that Plaintiff has alleged that she suffered a concrete injury in fact because, due to Defendants' misrepresentations, she selected and paid for coverage that she would never receive. *Cf. Laufer*, 22 F.4th at 878–80 (plaintiff did not allege concrete injury because she had no relevant interest in the information, was not given false information, and did not experience adverse effects from the deprivation of information).

At this procedural stage the Court takes these allegations as true, and the Court declines to dismiss them for lack of standing. Accordingly, Defendants' Motion to Dismiss Counts I through IV under Rule 12(b)(1) is **DENIED**.

## II.    <u>Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6).</u>

Next, Defendants argue that each of Plaintiff's claims should be dismissed due to legal or factual deficiencies. *See* **Doc. 17 at 8**. Although Defendants do not state the rule under which the claims should be dismissed, the Court will treat them as motions to dismiss under Rule 12(b)(6).

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint

must have sufficient factual matter that, if true, states a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).

In ruling on a motion to dismiss under Rule 12(b)(6), "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The Court must draw all reasonable inferences in Plaintiff's favor. *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). However, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

During this inquiry, the Court, sitting in diversity, applies New Mexico substantive law. *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 886 (10th Cir. 2011). In doing so, the Court must either follow the decisions of the New Mexico Supreme Court or attempt to predict what the supreme court would do. *Id.* The Court may consider the insurance policy as it is referred to in the Amended Complaint without converting Defendants' Motion to one for summary judgment under Rule 56 because it is central to the Plaintiff's claims and the parties do not dispute its authenticity. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

The Court will address each of Defendants' arguments in turn.

**A.    The Court does not find that the policy's offset language mandates dismissal of Plaintiff's claims.**

As an initial matter, Defendants argue that Plaintiff fails to state a claim because, unlike in *Crutcher*, the policy "expressly disclosed" the *Schmick* offset. **Doc. 17 at 4–5**. In Plaintiff's policy at the time of the accident, Defendants' "Uninsured/Underinsured Motorists Bodily Injury Coverage" endorsement stated:

> Any amounts payable under this Part will be reduced by the following.
> (1) Any payments made by or on behalf of the owner or operator of the uninsured motor vehicle or underinsured motor vehicle. Also any payment made by or on behalf of any other person or organization which may be legally liable.

**Doc. 14-1 at 35** (Exhibit 1)[2]; **Doc. 17 at 4**. And Defendants' "Uninsured/Underinsured Motorist (UM/UIM) Coverage Selection/Rejection - New Mexico" form stated:

> An underinsured motor vehicle is a motor vehicle which has a liability insurance policy or liability bond available at the time of a motor vehicle accident with limits less than the limits of liability provided by your UM/UIM Coverage.

**Doc. 14-1 at 11**; **Doc. 17 at 5**. Based on Defendants' reasoning, there was no misrepresentation because Defendants adequately made these disclosures. **Doc. 17 at 7–8**. Therefore, Plaintiff could not have expected UIM benefits from a tortfeasor with a $50,000 bodily injury liability policy. ***Id.***

---

[2] Under Federal Rule of Evidence 201, "[t]he [C]ourt . . . must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c). "The [C]ourt may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "In addition to the complaint, [a] district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen*, 287 F.3d at 941. If the contract contradicts a plaintiff's allegations, the contract's terms govern. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1238 (10th Cir. 2014). Neither Defendants nor Plaintiff dispute the insurance policy offered in Exhibit 1. Therefore, the Court takes judicial notice of Exhibit 1. "Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

**at 5**. Further, Defendants assert that Plaintiff's claim should fail because, under *Crutcher*, insurers are not required to use the word "offset" in UM/UIM disclosures. *Id.* **at 7**. In response, Plaintiff argues that a reasonable insured would not be sufficiently informed by these disclosures because recitation of the offset and statutory language is not adequate under *Crutcher*. **Doc. 18 at 6**.[3]

According to *Crutcher*, the insurer must "adequately disclose the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy." 2022-NMSC-001, ¶ 33. The disclosure must also be consistent with public policy. *Id.* ¶ 26. "If a person pays for something called 'underinsured motorist' insurance, we think it reasonable for the person to be under the impression that he or she is, in fact, eligible to receive UIM coverage if involved in an accident with someone who does not have enough insurance to cover the costs of the insured's injuries." *Id.* ¶ 30.

Under New Mexico law, an insured must be well informed when they make a decision regarding UM/UIM coverage. *See Kaiser v. DeCarrera*, 1996-NMSC-050, ¶ 10, 122 N.M. 221, 923 P.2d 588. The *Crutcher* court also indicated that insurers must do more than provide an offset provision and statutorily define the state of being underinsured, since "the average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the statutory minimum amount of UM/UIM

_____

[3] In her response, Plaintiff referenced and attached updated policy language from Defendants to prove that Defendants' disclosure under Plaintiff's policy was inadequate. **Doc. 18 at 5**. Although Defendants do not dispute its authenticity, Defendants argue that the updated policy is inadmissible under Federal Rule of Evidence 407. **Doc. 19 at 3**. Here, the Court finds that, in its discretion, it need not consider the updated language to evaluate the Plaintiff's claim's legal merits. *See Miller v. Glantz*, 948 F.2d 1562 (10th Cir. 1991) ("The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

insurance, he or she will never receive the benefit of underinsured motorist coverage." *See* 2022-NMSC-001, ¶ 30 (citing District of New Mexico opinions for the proposition that the average insured would not understand that minimum UIM coverage would have little to no value); *see also Lucero v. Nationwide Mut. Ins. Co.*, No. 1:19-cv-0311-KK-JHR, 2022 WL 4598482, at *12 (D.N.M. Sept. 30, 2022) (mere recitation of offset is not enough).

Therefore, Defendants' disclosure of the *Schmick* offset does not mandate dismissal of Plaintiff's claims.[4]  Additionally, although Plaintiff points out that the disclosure does not include the word "offset," the Amended Complaint does not appear to state that a disclosure is adequate if, and only if, an insurer uses the word "offset."  *See* **Doc. 14 ¶ 16**. Nor does Plaintiff make that argument in her response. *See* **Doc. 18**.  Therefore, the Court will not reach a ruling on whether Plaintiff's claim must be dismissed because the policy's disclosure lacked the word "offset."

Based on the above, viewing the facts most favorable to Plaintiff, the Court finds that she has plausibly pled that Defendants did not adequately disclose the *Schmick* offset such that a reasonable insured would understand that her minimum coverage would have little to no value. Accordingly, Plaintiff's claims do not mandate dismissal due to the Defendants' disclosures.

## B.    The Court dismisses the negligence claim (Count I).

Defendants move to dismiss the negligence claim, arguing that New Mexico "does not support garden-variety negligence claims by an insured against an insurer," and an insurer's duties do not extend beyond those contained in the contract.  **Doc. 17 at 13**.  Rather than an independent claim, negligence is an element of bad faith.  ***Id.***  In response, Plaintiff argues that her negligence

---

[4] Defendants appear to request that the Court rule on the adequacy of Defendants' disclosure as a matter of law. **Doc. 17 at 4–8**; **Doc. 19 at 2** (Defendants' Reply). Since Defendants did not make a specific request in the Motion, and the issue has not been fully briefed, the Court declines to consider the apparent request at this procedural stage.

claim is well-pled because Defendants failed to meaningfully offer UM/UIM insurance such that "no insured could intelligently accept or reject illusory UIMBI coverage." **Doc. 18 at 11**. Moreover, New Mexico does not "sanction the deception of those consumers in their selection of policies and coverage levels" by allowing insurance companies to authorize selling UM and UIM coverage together. **Doc. 18 at 11**. In support of their arguments, both parties point to cases where this district granted or denied Rule 12(b)(6) motions to dismiss negligence claims in similar putative class action lawsuits. *See id.*; **Doc. 17 at 13**.

Looking to New Mexico law, Defendants are misguided in relying on *Ambassador Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 1984-NMSC-107, 102 N.M. 28, 690 P.2d 1022, for its holding that ordinary negligence claims against insurers must be dismissed and that the insurer's duties do not extend beyond contractual duties. In 2023, the New Mexico Court of Appeals rejected a similarly broad argument in *Hovey-Jaramillo v. Liberty Mutual Insurance*, 2023-NMCA-068, 535 P.3d 747, *cert. denied* (S-1-SC-40020, Sept. 12, 2023). There the court of appeals narrowed *Ambassador*'s holding to factual situations: (1) that best fit within bad faith failure to settle claims and (2) where, for policy purposes, it is not necessary or appropriate to add negligence as another potential avenue of relief on top of existing causes of action, like the implied covenant of good faith and fair dealing. *Id.* ¶¶ 13–15; *see also id.* ¶ 19 (agreeing with the outcome in *Fava v. Liberty Mutual Insurance Corp.*, No. 1:17-cv-00456-WJ-LF, 2019 WL 133269 (D.N.M. Jan. 8, 2019), because it involved the direct processing of an insurance policy claim and would fall under the obligation to pay a first party claim). The court of appeals also found that a narrower reading of *Ambassador* was consistent with existing New Mexico case law. *Id.* ¶¶ 21, 25.

Considering the above, Plaintiff is not precluded from pursuing a negligence claim unless Plaintiff's claim alleged a failure to settle claim or implicated the policy considerations in

*Ambassador. See United States v. Venjohn*, 104 F.4th 179 (10th Cir. 2024) (until state supreme court modifies a rule, a ruling from an intermediate court may be "authoritative" interpretation of state law) (citing *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223 (1940)).

Turning to the Amended Complaint, the Court finds that Plaintiff fails to plausibly allege a negligence claim. First, *Crutcher* forecloses Plaintiff's negligence claim to the extent that it rests on the allegation that Defendants had a duty to "ensure Plaintiff and Class Members would be offered and obtain the maximum benefit of underinsured coverage purchased," **doc. 14 ¶ 61**, since *Crutcher* confirmed that "UM/UIM coverage at the minimum level is permitted because the law not only allows, but requires, it to be sold as was done here," 2022-NMSC-001, ¶ 33. Second, although Count I is styled as a "negligence" claim, Plaintiff's remaining claim amounts to an allegation that Defendants' "materially misrepresented" the terms of the UIM coverage—which is typical and characteristic of a negligent misrepresentation claim. In making this determination, the Court does not find that a plaintiff seeking relief from UM/UIM misrepresentations under *Crutcher* is necessarily precluded from stating a plausible ordinary negligence claim. Rather, here, Plaintiff failed to distinguish her negligence claim from a negligent misrepresentation claim.

Accordingly, the Court concludes that Plaintiff failed to state a plausible negligence claim. The Court **GRANTS** Defendants' request to dismiss Count I.

### C.    The Court declines to dismiss the Unfair Trade Practices Act claim (Count II).

Next, Defendants argue that Plaintiff failed to plausibly plead that Defendants violated the New Mexico Unfair Trade Practices Act ("UPA") for unfair, deceptive, or unconscionable trade practices as defined in NMSA 1978, Section 57-12-2(D)(7), (D)(14), (D)(15), (D)(17), and (E) (2009, amended 2025). According to Defendants, Plaintiff did not allege facts indicating that Defendants knew or should have known that they were making false or misleading statements.

**Doc. 17 at 13–14**. Plaintiff argues that she sufficiently alleged knowledge. **Doc. 18 at 12**. The Court disagrees with Defendants and finds that Plaintiff plausibly pled a UPA claim.

"To state a claim under the UPA, a plaintiff must show that: (1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007); *see also Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 13, 112 N.M. 97, 811 P.2d 1308.

Looking to the Amended Complaint, Plaintiff alleges the knowledge element. Specifically, Plaintiff states that Defendants were "on notice"—knew or should have known—that the minimal limits UIM policies provide no coverage following the *Schmick* and *Weed Warrior* decisions in 1985 and 2010, respectively. **Doc. 14 ¶ 72**. As discussed above, Plaintiff has also alleged that, despite this knowledge, Defendants did not adequately disclose that her UIM policy was illusory, which misled her to believe that she would receive UIM benefits if the tortfeasor's liability insurance did not cover her accident-related costs.

Accordingly, Plaintiff states a plausible UPA claim, and the Court **DENIES** Defendants' Motion to dismiss Count II.

### D.    The Court declines to dismiss the Unfair Insurance Practices Act claim (Count III).

Defendants state that Plaintiff's Unfair Insurance Practices Act ("UIPA") claim should be dismissed because the conduct alleged is not related to how Plaintiff's claim was handled. **Doc. 17 at 14**. Therefore, Plaintiff does not have a cause of action under NMSA 1978, Section 59A-16-20 (1997, amended 2025). ***Id.*** In response, Plaintiff underscores that since her claim is related to

Defendants misrepresentations—pursuant to Section 59A-16-20(A)—as alleged in the Amended Complaint, she has a cause of action under Section 59A-16-30 (1990). **Doc. 18 at 14–15**; **Doc. 14 ¶ 85**.

The UIPA "seeks to prohibit unfair or deceptive acts and practices in the insurance industry." *Brule v. Blue Cross & Blue Shield of N.M.*, 455 F. App'x 836, 840 (10th Cir. 2011); *see also* NMSA 1978, § 59A-16-2 (1984). Insurance companies "have a duty to disclose material facts about the policies they sell under the UIPA." *Brule*, 455 F. App'x at 840 (citing *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, 133 N.M. 669, 68 P.3d 909). Additionally, New Mexico has long recognized that "both the insurer and the insured have a duty not to misrepresent or withhold information material to an insurance contract." *Id. (*quoting *Azar*, 2003-NMCA-062, ¶ 56). "Thus, New Mexico law strongly encourages open and transparent dealings in the insurance context, particularly with regard to material information." *Id.*; *see also Smoot v. Physicians Life Ins.*, 2004-NMCA-027, ¶¶ 15–16, 135 N.M. 265, 87 P.3d 545 (concluding that "[t]he UPA and the UIPA each imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading" and noting the existence of "a common law duty to disclose the allegedly material facts").

Here, the Court is not persuaded that Plaintiff's UIPA claim must be dismissed because Defendants were not engaged in claims-related activity. In the absence of New Mexico case law on this issue, the Court makes this determination after attempting to predict how the New Mexico Supreme Court would rule.

To decide whether to narrowly interpret Section 59A-16-20(A) to only allow claims-related conduct, the Court looks to the legislative intent of the UIPA. *State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022. First, the Court looks to the plain language of the statute.

*Id.* ¶ 9; *see also* NMSA 1978, § 12-2A-19 (1997) ("The text of a statute or rule is the primary, essential source of its meaning."). As Defendants have pointed out, Section 59A-16-20 is titled "Unfair claims practices defined and prohibited," and begins with the language, "[a]ny of the following practices with respect to claims." Section 59A-16-20; *see also Serrano v. State, Dep't of Alcoholic Beverage Control*, 1992-NMCA-015, 113 N.M. 444, 827 P.2d 159 ("While the heading cannot be used to produce an ambiguity in a statute which is otherwise clearly drafted, a legislatively enacted section heading may be useful in determining legislative intent in a statute which is ambiguously drafted." (internal citation omitted)).

However, looking at Section 59A-16-20 in its entirety, the Court notes that subsection (A)—unlike subsections (B)–(N), (P)—does not contain the term "claim." *Compare* § 59A-16-20(A) ("misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue"), *with* § 59A-16-20(B) ("failing to acknowledge and act . . . upon communications *with respect to claims* from insureds arising under policies" (emphasis added)), *and* § 59A-16-20(D) ("failing to affirm or deny *coverage of claims* of insureds within a reasonable time" (emphasis added)). Therefore, the Court finds that the absence of "claim" in subsection (A) indicates that the New Mexico legislature did not intend to only prohibit insurer's misrepresentations of policy provisions when handling claims.

Further, in 2025, the legislature amended Section 59A-16-20 to add prohibited general business practices unrelated to claims activity: marketing, offering, soliciting, or negotiating. *See* 2025 N.M Laws, ch. 127, § 10.  Based on the inconsistency in the Section's language and recent legislative amendments, the Court cannot conclude that Section 59A-16-20(A) should be narrowly interpreted to only include claims-related conduct.

Moreover, a narrow interpretation would conflict with the purpose of the UIPA, which is to prohibit unfair or deceptive acts or practices. *See* NMSA 1978, §§ 59A-16-2 to -3 (1984); *see also* NMSA 1978, § 12-2A-18(A)(1)–(2) (1997) ("A statute . . . is construed, if possible, to: give effect to its objective and purpose; [and] give effect to its entire text . . . ."). Furthermore, as Defendants pointed out in their reply, a narrow interpretation of Section 59A-16-20(A) would bar Plaintiff from any UIPA claim since a material nondisclosure within policy documents does not appear to fit within another section of the UIPA. *See* **Doc. 19 at 9**. Disallowing a claim for this kind of practice would amount to sanctioning a loophole where insurers are prohibited from deceptive and misleading statements in certain precontract documents, *see* Section 59A-16-4 (1984) (prohibiting misrepresentation and false advertisement in an "estimate, illustration, circular, statement, sales presentation or comparison"), but not in others like insurance applications and policy booklets.

Looking to the Amended Complaint, Plaintiff alleges that Defendants "misrepresented the terms of the policy" or "failed to disclose material facts" related to illusory UM/UIM coverage, in violation of Section 59A-16-20(A). **Doc. 14 ¶¶ 81, 85**. Since the Court has determined that Section 59A-16-20(A) is not strictly limited to claims-related activity, Plaintiff has adequately pled that Defendants violated the UIPA. *See, e.g.*, *Apodaca v. Young Am. Ins. Co.*, No. 18-0399-RB-JHR, 2019 WL 231757, at *8 (D.N.M. Jan. 16, 2019) (denying defendants' motion to dismiss when plaintiff alleged violation of Section 59-16-20(A) for failure to disclose *Schmick* offset); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, No. 1:18-cv-00328-WJ-SCY, 2018 WL 4148434, at *7 (D.N.M. Aug. 30, 2018) (same).

Plaintiff has alleged a viable claim under the UIPA, and therefore, the Court **DENIES** Defendants' request to dismiss Count III.

**E.    The Court declines to dismiss the breach of the covenant of good faith and fair dealing claim (Count IV).**

Defendants state that Plaintiff's good faith and fair dealing claim should be dismissed because Defendants did not deprive Plaintiff of the benefit of the insurance agreement. **Doc. 17 at 15**. Since Plaintiff was not owed UIM benefits, Defendants paid everything required under the insurance contract. *Id.* Meanwhile, Plaintiff states that she alleged a breach of covenant of good faith and fair dealing tort claim because it arises from misrepresentations Defendants made through the special relationship between insurer and insured. **Doc. 18 at 16–17**; *see also* **Doc. 14 ¶ 90**.

New Mexico recognizes a duty of good faith between insurer and insured. *Ambassador Ins. Co.*, 1984-NMSC-107, ¶ 11; *see also Salas v. Mountain States Mut. Cas. Co.*, 2009-NMSC-005, ¶ 13, 145 N.M. 542, 546, 202 P.3d 801. With insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that one party will not do anything that will deprive the other of the benefits of the agreement. *Watson Truck & Supply Co., Inc. v. Males*, 1990-NMSC-105, ¶ 12, 111 N.M. 57, 801 P.2d 639. "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.*

Here, the Court finds that Plaintiff plausibly alleged a claim for breach of the implied covenant of good faith and fair dealing. Plaintiff claims that, through this special relationship, Defendants collected premiums on an illusory coverage and made misrepresentations. These allegations go to the heart of whether Defendants acted in "good faith." Further, courts within this district have found that defendants' precontract conduct can serve as a basis for good-faith breach liability in similar putative actions. *See, e.g.*, *Apodaca v. Young Am. Ins. Co.*, 702 F. Supp. 3d at 1157 (relying on *Salas*, 2009-NMSC-005, ¶¶ 13–14).

Accordingly, the Court declines to dismiss Plaintiff's good faith and fair dealing claim at this procedural stage. Defendants' request to dismiss Count IV is **DENIED**.

**F.    Court declines to dismiss the negligent misrepresentation claim (Count V).**

Defendants argue that Plaintiff failed to point to specific, nonconclusory facts that Defendants intended to mislead her.  **Doc. 17 at 16**.  Plaintiff asserts that, as early as 1985, Defendants knew that minimum UIM coverage is illusory but "hid" that it is "essentially worthless in effect." **Doc. 14 ¶¶ 98–100**. Further, Plaintiff notes that she does not have to plead that Defendants intentionally misled Plaintiff—only negligence is required.  **Doc. 18 at 17**.

To state a negligent misrepresentation claim, a plaintiff must show that "the offending party must have breached a duty of disclosure owed to the injured party, the injured party must have had a right to rely on the misinformation, and it must have sustained damages." *Ruiz v. Garcia*, 1993-NMSC-009, ¶ 26, 115 N.M. 269, 850 P.2d 972; *see also Robey v. Parnell*, 2017-NMCA-038, ¶ 31, 392 P.3d 642. "The theory of liability for this tort is one of negligence rather than of intent to mislead." *Sims v. Craig*, 1981-NMSC-046, ¶ 4, 96 N.M. 33, 627 P.2d 875; *see also Ledbetter v. Webb*, 1985-NMSC-112, ¶ 26, 103 N.M. 597, 711 P.2d 874 (distinguishing negligent misrepresentation from the intentional torts of fraud or deceit).

Here, Plaintiffs have plausibly pled a negligent misrepresentation claim. Defendants allegedly misled the Plaintiff into believing she would receive UIM coverage when they knew that she likely would not.  The Court **DENIES** Defendants' request to dismiss Count V.

**G.    The Court declines to dismiss the unjust enrichment claim (Count VI).**

Next, Defendants argue that "the presence of an insurance contract bars a claim for unjust enrichment." **Doc. 17 at 17**. Plaintiff disagrees because her claim is grounded in material misrepresentations in the contract, rather than a breach of the contract.  **Doc. 18 at 18**.

"One who has been unjustly enriched at the expense of another may be required by law to make restitution. This quasi-contractual obligation is created by the courts for reasons of justice

and equity." *Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 8, 110 N.M. 173, 793 P.2d 855 (quoting *U.S. ex rel. Sunworks Div. of Sun Collector Corp. v. Ins. Co. of N. Am.*, 695 F. 2d 455, 458 (10th Cir. 1982)). To prevail on an unjust enrichment claim, a party must demonstrate that: "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 54, 150 N.M. 428, 260 P.3d 414 (quoting *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200, 3 P.3d 695).

The Court finds that Plaintiff has plausibly pled an unjust enrichment claim. Plaintiff has adequately pled that the contract provision is illusory. Therefore, the contract provision is unenforceable, and Plaintiff cannot seek adequate remedy under contract law. "As a general rule, equity will not act if there is a complete and adequate remedy at law." *Belanger v. Allstate Fire & Cas. Ins. Co.*, 588 F. Supp. 3d 1249, 1267 (D.N.M. 2022); *see also Lucero*, 2022 WL 4598482, at *18 (denying defendants' motion for judgment on the pleadings as it relates to allegations that defendant misled or failed to inform). Further, Plaintiff has also pled that Defendants unjustly retained benefits from Plaintiff's UIM premium and claim payments. **Doc. 14 ¶ 107**.

The Court finds that Plaintiff has adequately pled unjust enrichment, and therefore, the Court **DENIES** Defendants' Motion to dismiss Count VI.

### H.    The Court declines to dismiss the injunctive relief claim (Count VII).

Next, Defendants argue that injunctive relief is not a separate claim and is only available where the underlying claim is meritorious. **Doc. 17 at 17**. Defendants further argue that Plaintiff fails to allege that irreparable harm will occur without prospective relief because Plaintiff does not allege she is still insured by Defendants, nor does she allege that she is likely to be injured in another automobile accident. ***Id.* at 17–18**.

19

Defendants' arguments misunderstand Plaintiff's basis for relief. Plaintiff does not allege that she will experience harm should she get into another automobile accident. Rather, the irreparable harm will result from Defendants' "continuing practices that violate the duties and contractual and legal obligations owed to Plaintiff and Class Members" and "collecting premiums for the sale of illusory and/or misleading underinsured motorist coverage." **Doc. 14 ¶¶ 112–13**.

Here, the Court finds that Plaintiff has alleged irreparable harm. Plaintiff's remaining claims for negligent misrepresentation and violations of the UPA, the UIPA, and the covenant of good faith and fair dealing are appropriate bases for injunctive relief. *See* § 57-12-10(A) (allowing injunctive relief for UPA claims); *see also* § 59A-16-30 (allowing "remedies otherwise available against the same conduct under the common law or other statutes of this state" for UIPA claims).

Accordingly, since bases for a derivative claim remain, the Court **DENIES** Defendants' Motion as to Plaintiff's injunctive relief claim.

## I.    The Court declines to dismiss the request for punitive damages.

Finally, Defendants argue that Plaintiff has failed to allege any facts to support her request for punitive damages. **Doc. 17 at 19**. Plaintiff disagrees, pointing to supporting factual assertions in her Amended Complaint. **Doc. 18 at 19**.

"To be liable for punitive damages, a wrongdoer must have some culpable mental state, and the wrongdoer's conduct must rise to a willful, wanton, malicious, reckless, oppressive, or fraudulent level." *Clay v. Ferrellgas, Inc.*, 1994-NMSC-080, ¶ 12, 118 N.M. 266, 881 P.2d 11 (internal citations omitted). Willful conduct is "the intentional doing of a wrongful act with knowledge that harm may result."  UJI 13-1718 NMRA. Recklessness in the context of punitive damages refers to "the intentional doing of an act with utter indifference to the consequences."

*Nowell v. Medtronic Inc.*, 372 F. Supp. 3d 1166, 1238 (D.N.M. 2019), *aff'd*, No. 19-2073, 2021 WL 4979300 (10th Cir. Oct. 27, 2021).

Here, Plaintiff alleges that Defendants have been on notice since *Schmick* and *Weed Warrior* were decided in 1985 and 2010, respectively, that "underinsured motorist policies provide no coverage at minimal levels" and that policyholders with minimal UIM coverage will "los[e] the full benefit of their underinsured coverage displayed on the face of their declaration pages because of the Schmick offset." **Doc. 14 ¶ 72**. Plaintiff alleges that Defendant "withheld" and "hid" this longstanding knowledge that Plaintiff's UIM coverage was "essentially worthless." *Id.* **¶ 99**. Based on these facts, Plaintiff has sufficiently alleged that Defendants acted willfully or recklessly.

Punitive damages are potentially allowable under multiple claims in this action, including the UPA, certain contract claims, and bad faith. *See Schwartz*, 2018 WL 4148434. The Court agrees with Plaintiff and will allow punitive damages to the extent it can be tied to other causes of action.

Plaintiff's Amended Complaint pleads just enough facts to survive dismissal at this stage. Accordingly, the Court **DENIES** Defendants' Motion as it relates to punitive damages.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss (Doc. 17) is hereby **GRANTED IN PART AND DENIED IN PART** for reasons described in this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Count I in the Amended Complaint is **DISMISSED WITH PREJUDICE**.

_____
     /S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE